FILED

2016 Mar-16  PM 05:26
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **CHANDRA NICHELE MOSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:14-CV-2040-VEH** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

### I.   Introduction

Plaintiff Chandra Nichele Moss ("Moss") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Moss timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### II.   Statement of the Case

Moss was 38 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 50–51). She has completed the 12th grade. (Tr. 50). Her past work

experience includes employment as a mental health resident aide and a mental health service supervisor. (Tr. 69–70). She claims she became disabled on April 30, 2012, due to diabetes, high blood pressure, degenerative disc disease, sleep apnea, and arthritis. (Tr. 190). She last worked on April 30, 2012. (Tr. 160).

On April 18, 2012, Moss protectively filed a Title II application for a period of disability and DIB. (Tr. 160). On May 23, 2012 the Commissioner initially denied these claims. (Tr. 90). Moss timely filed a written request for a hearing on November 13, 2013. (Tr. 21). The ALJ conducted a hearing on the matter on July 24, 2013. (Tr. 46). On November 6, 2013, he issued his opinion concluding Moss was not disabled and denying her benefits. (Tr. 23–39).   She timely petitioned the Appeals Council to review the decision. (Tr. 20–21). The Appeals Council issued a denial of review on her claim. (Tr. 1).

Moss filed a Complaint with this court on October 23, 2014, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 3, 2015. (Doc. 8). Moss filed a supporting brief, doc. 10, on March 19, 2015, and the Commissioner responded with her own, doc. 11, on April 17, 2015.

## III.   Standard of Review

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is

supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Statutory and Regulatory Framework

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability

to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th

Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  The

sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The  Commissioner  must  further  show  that  such  work  exists  in  the  national  economy  in

significant numbers. *Id.*

## V.     ALJ Findings

After consideration of the entire record, the ALJ made the following findings:

1.     The claimant met the insured status requirements of the Social Security Act through December 31, 2016.

2.     The claimant had not engaged in substantial gainful activity since April 18, 2012, the alleged disability onset date.

3.     The claimant had the following severe impairments: obesity, degenerative disc disease (DDD) of the lumbar spine, rheumatoid arthritis (RA), and diabetes mellitus (DM) (20 C.F.R. 404.1520(c)).

4.     The claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     The claimant had the residual functioning capacity ("RFC") to perform unskilled sedentary work as defined in 20 C.F.R. 404. 1567(a) that requires no climbing of ladders, ropes, or scaffolds and only occasional climbing of ramps and stairs; no more than occasional balancing, stooping, crouching, kneeling, and crawling; no more than occasional exposure to

pulmonary irritants, extreme heat or cold, excessive vibration, and humidity/wetness; no operational control of hazardous or moving machinery; and no work at unprotected heights.

6.   The claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

7.   The claimant was born on [redacted], 1975 and was 36 years old, which is defined as a younger individual age 18–44, on the alleged disability date. (20 C.F.R. 404.1563).

8.   The claimant had at least a high school education and was able to communicate in English.

9.   Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.  The claimant had not been under a disability, as defined in the Social Security Act, from April 18, 2012, through the date of this decision.

(Tr. 28–38).

## VI.   <u>Analysis</u>

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir.

1980)).[1] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Moss urges this court to reverse the Commissioner's decision to deny her benefits on two grounds: First, that the ALJ failed to give controlling weight to the opinion of Moss's treating physician, Dr. Shamblin, and second, that the ALJ improperly applied the pain standard to determine the disabling effect of a claimant's alleged pain. (Doc. 10). The court will consider these alternative grounds in turn, although neither rationale is persuasive. The Commissioner's decision will be **AFFIRMED**.

Beginning with Moss's first assignment of error, medical opinion evidence <u>must</u> be considered by the ALJ. *See* 20 C.F.R. § 404.1527(b). If the opinion comes from a treating source and is otherwise supported by the medical evidence, then that opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). The Eleventh Circuit has explained that an opinion is not otherwise supported by the medical evidence when 1) there is insufficient evidence to support a physician's conclusion; 2) the evidence undermines the physician's conclusion; 3) the physician's opinion is conclusory; or 4) the physician's own treatment records do not support his position. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

---

[1]    This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

1997)) (internal quotation marks omitted).

Opinions from medical sources that purport to establish whether a claimant is disabled, unable to work, whether the impairments meet the listings, or the claimant's RFC are not "medical opinions," although the Commissioner considers them. 20 C.F.R. § 404.1527(d). Thus, such opinions are entitled to no particular weight, 20 C.F.R. § 404.1527(d)(3), although it is "imprecise," *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), to say that the Commissioner may ignore them. They are not like the conclusory allegations (treating them as such is a common error) due to be ignored under the *Twiqbal* regime; rather, the opinions are merely not dispositive.

This is a somewhat nuanced framework, although the real question at the end of the day is always whether there was substantial evidence to support the ALJ's decision; the rules—especially the caselaw—are window dressing.[2] *Cf.* Matthew C. Stephenson and Adrian Vermeule, *Chevron Has Only One Step*, 95 VA. L. REV. 597, 604 & 605 n. 28 (2009) (citing Ronald M. Levin, *The Anatomy of Chevron: Step Two Reconsidered*, 72 CHI.-KENT L. REV. 1253, 1296 (1997)) (considering whether the second step of

---

[2] The best example of window dressing is actually found when evaluating subjective pain. *Compare Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (may not discount subjective complaints of pain on the basis of lack of objective support and clinical findings) *with Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991) (may discount subjective complaints of pain on the basis of lack of objective support and clinical findings). The lesson here, of course, is that neither discounting nor failing to discount such complaints is error *per se*; either outcome is sustainable as long as it is based on substantial evidence.

*Chevron*[3] is merely arbitrary and capricious review under 5 U.S.C. § 706).

Unfortunately, the window dressing can obscure the window, and when the topic is medical opinions, the command to give controlling or substantial weight to these opinions has been at times warped by counsel into what I call the permission slip theory of medical opinions. Under this theory, a treating physician writes a conclusory opinion unsupported by any evidence, hoping to secure disability benefits in much the way he might produce a slip excusing a student's absence. Thus, what formerly was an example of a means of satisfying the substantial evidence requirement is corrupted into a method of avoiding it. This court has criticized the permission slip theory before, *see*, *e.g.*, *Pounds v. Colvin*, No. 2:14-cv-1785-VEH, (N.D. Ala. Feb. 17, 2016); *Springer v. Colvin*, No. 5:14-1827-VEH (N.D. Ala. Oct. 10, 2015), but it is worth noting that presence of a "permission slip" in the record does not mean that the opinion should be ignored. Instead, it should simply be treated like any other evidence.

With these principles in mind, I turn to Dr. Shamblin's opinions. First up is a disability claim form completed by Dr. Shamblin on May 8, 2012, which indicates that Moss has impairments of diabetes mellitus ("DM"), rheumatoid arthritis ("RA"), anemia, and hypertension ("HTN"). (Tr. 554). Dr. Shamblin expressed the opinion that she would be able to return to work within one to three months. (*Id.*). On March 19, 2012, Dr.

_____

[3] *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

9

Shamblin indicated that Moss was totally and permanently incapacitated, because she had DM, RA, HTN, and anemia. (Tr. 488). He explained his conclusion by saying:

> [Patient's] RA will cause flare-ups rendering the pt from any type of physical activity. RA also causes daily pain of the joints especially in the hands. Pt also has uncontrolled DM. High blood sugar levels will cause dizziness. Hypertension will also cause dizziness if BP is too high. Pt's anemia will also cause weakness fatigue and dizziness.
>
> Due to Pt's RA, she is not able to lift heavy objects. Pt's DM, hypertension, and anemia [limit] the patient because of the dizziness and fatigue that the pt will experience. Flare-ups caused by RA will render the patient from any daily activities.

(Tr. 488–89). On July 27, 2012, Dr. Shamblin completed the same form and indicated that he was unsure when Moss would be able to return to work. (Tr. 456). On September 13, 2012, Dr. Shamblin completed a form indicating that Moss had DM, RA, anemia, and HTN, and he checked a box indicating that Moss can never return to work. (Tr. 434).

The ALJ credited all the diagnoses in Dr. Shamblin's opinions. The opinion information about <u>when</u> Moss can return to work is not subject to any particular weight, so it may be freely weighed by the ALJ against the other evidence in the record. As to the the March 19 opinion—by far the most substantial one—the ALJ credited the portions of the opinion discussing Moss's DM, HTN, and anemia (Tr. 36–37).

As to the portions of the March 19 opinion relating to Moss's RA, there are essentially three pieces of information contained in that opinion: that Moss's RA renders

her incapable of performing daily activities, that the RA causes pain, and that the RA prevents her from lifting heavy loads. The first is undermined by Moss's reported daily activities, which will be discussed more fully in the pain section. The other two statements are entitled to substantial deference, and the ALJ <u>agreed</u> Moss cannot lift heavy weights. (Tr. 37). As to Moss's pain, the ALJ gave due credit to the physician's opinion that the Moss was in pain because the ALJ <u>agreed</u> Moss was likely in pain, tr. 37,[4] but an unadorned announcement that a claimant is in pain is insufficient to establish that the pain is disabling. The ALJ properly considered Dr. Shamblin's opinions.

Moss argues that under SSR 96-5p, the ALJ was under a duty to recontact Dr. Shamblin. This is no longer the law; SSR 96-5p has been superseded, *see* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,655–57 (Feb. 23, 2012) (codified at 20 C.F.R. §§ 404.1520b & 416.920b), and the decision to recontact a physician is now within the ALJ's discretion.

Turning to the pain analysis, there is no doubt the ALJ applied the right test. *Compare Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted) (pain standard requires evidence of an underlying medical condition; and that the objectively determined medical condition can reasonably be expected to give rise to the

_____

[4] Technically, the ALJ stated that Moss was likely in pain when discussing the opinion evidence of Moss's mother, but the point remains that the ALJ believed she was in pain. To the extent that Moss argues that Moss's RA caused a separate pain that the ALJ failed to adequately discuss, I discuss it with the pain standard generally below.

claimed pain) *with* tr. 31–32 (applying pain standard). Moss spends almost the entirety of her pain standard argument explaining that she has presented enough evidence to satisfy the first prong of the standard, and the ALJ agreed. (*See* Tr. 32 ("[T]he [ALJ] finds that the claimant has medically determinable impairments that could reasonably be expected to cause symptoms such as those alleged.")).

A very small part of her argument is devoted to the disabling effect of her pain, and all Moss has to say is that Dr. Shamblin said she was in so much pain as to be disabled. There are two responses: First, the use of Dr. Shamblin's opinion in this way comes dangerously close to being an evidentiarily worthless permission slip. Second, Dr. Shamblin's opinion does not say that Moss's pain is disabling, the mere fact of pain is not *ipso facto* disabling, and there is no requirement that the ALJ read the evidence in the light most favorable to the claimant. So, Dr. Shamblin's opinion is insufficient to establish Moss's disability by pain.

Moss's lack of argument on the issue aside, the court will consider whether the ALJ correctly concluded that Moss's subjective claims of pain should be disregarded because Moss's daily activities were inconsistent with disabling pain. I begin with the governing law: "[C]redibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). It is axiomatic that participation in activities inconsistent with the existence of an alleged health condition may properly be

considered as bearing on the credibility of the allegation. Moss, in her activity description, explained that she performed light housekeeping, folded clothes, drove her daughter to school, went outside to walk, shopped for an hour at a time, and attended a water aerobics class. (Tr. 173–177).   The ALJ noted these activities. (Tr. 34–35). Because these activities are inconsistent with Moss's testimony that she is in disabling pain, and that she must spend all day lying down and "elevat[ing] [her] everything," tr. 67, the ALJ's decision to discount her subjective testimony was based on substantial evidence.

The same reasoning applies to Dr. Shamblin's opinion that Moss's RA prevents her from doing daily activities. Further, the ALJ pointed out that there was little evidence in the record of RA (except for a lab result at tr. 401 which does not measure pain), Moss did not complain about it much in the record at a level to establish the pain is disabling, and Moss showed 5/5 strength in her hands (Tr. 274; 392). Additionally, Moss did not show swelling in her fingers, although they were sometimes tender. (Tr. 274). The evidence did not demonstrate that Moss is or was disabled.

**VII.   Conclusion**

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it.

Accordingly, the decision will be affirmed by separate order.

**DONE** and **ORDERED** this 16th day of March, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge